**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

**SUSAN T. YATES,**
        **Plaintiff,**

**-v-**                                **CASE NO. 2:06-CV-563-FTM-29-DNF**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
        **Defendant.**
_____/

**OPINION AND ORDER[1]**

The Plaintiff filed an application[2] for a period of disability, and disability insurance benefits on November 4, 2003, alleging disability beginning March 20, 2003.[3] [Tr. 53-55]. This application was denied initially on March 5, 2004, and upon reconsideration on June 8, 2004. Following a hearing held at the Plaintiff's request,[4]

---

[1]     Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated October 24, 2007. (Doc .#23).

[2]     According to the Administrative Law Judge's ("ALJ") decision, dated August 22, 2006, the Plaintiff had filed a prior application for Social Security Disability benefits. No prior application, or ALJ decision was contained in the present transcript. The current ALJ decision indicates that the prior ALJ decision was dated April 8, 2003.

[3]     Plaintiff previously applied for benefits which resulted in a decision by an ALJ denying that claim on April 8, 2003. The ALJ declined to reopen that decision, and applied res judicata to the period covered by that determination. When a prior decision is not reopened, the court has no jurisdiction to review the actions of the Commissioner on the earlier claim in the absence of a colorable constitutional claim. *Califano v. Sanders* 430 U.S. 99, 107-108 (1977); *Graham v.* Bowens, 786 F.2d 1113, 1114 (11th Cir. 1986).

[4]     In accordance with the regulations, the Plaintiff was notified that her hearing would be held via video conference. [Tr. 19-23]. 20 C.F.R. § 404.936(c).

Administrative Law Judge (ALJ) Elving L. Torres issued a decision denying the

Plaintiff's claim on August 22, 2006. [Tr. 8-17].  The Appeals Council denied the

Plaintiff's request for review on September 22, 2006. [Tr. 3].  Therefore, the ALJ's

decision became the final decision of the Commissioner. The Plaintiff then filed this civil

action seeking judicial review of the Commissioner's final decision under 42 U.S.C.

§§405(g) and 1383(c)(3).

The Commissioner has filed a transcript of the proceedings (hereinafter referred

to as "Tr." followed by the appropriate page number), and the parties have filed legal

memoranda.  For the reasons set forth below, the Court finds that the Commissioner's

decision is due to be **REVERSED** and this matter  **REMANDED** to the Commissioner

for determination of the payments allowable by statute and regulation.

I.      **SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ'S DECISION
        AND STANDARD OF REVIEW**

The plaintiff is entitled to disability benefits when she is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period

of not less than twelve months.  42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A).  The

Commissioner has established a five-step sequential evaluation process for determining

whether the plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. §

416.920(a)(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The plaintiff

bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the

Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

At Step 1 the ALJ found the plaintiff had not engaged in substantial gainful

activity since her alleged onset date of March 20, 2003.  A review of the Plaintiff's

earning records shows the Plaintiff worked after the alleged onset date, however, she did

not earn enough to be considered substantial gainful activity.  (Tr. 12).   At Step 2 the

ALJ found the plaintiff  suffered from fibromyalgia, degenerative joint disease, bilateral

forearm myotendinitis and right arm neuropathy. [Tr. 12].   At Step 3 the ALJ found  that

the plaintiff does not have an impairment or combination of impairments that meet or

medically equal one of the listed impairments in  20 C.F.R. §§ Part 404,  Subpart P,

Regulations No. 4 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526).  (Tr. 13).  At Step 4

the ALJ determined the plaintiff had the residual functional capacity to perform up to

light work activity.  Light work involves lifting/carrying 10 pounds frequently and 20

pounds occasionally, with standing/walking 2/3 of a day more or less for 6 hours (20

C.F.R. 404.1567(b).  The ALJ found the plaintiff's allegations regarding her limitation

not totally credible.  (Tr. 13).  At step 5, the burden shifts to the Commissioner only after

the plaintiff has proven that she is unable to engage in past relevant work and to

determine if there is other work available that the plaintiff can perform.  20 C.F.R. §§

494.1520(g), 416.920(g).

The Court reviews the Commissioner's decision to determine if it is supported by

substantial evidence and based upon proper legal standards.  Crawford v. Commissioner

of Social Security, 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence is more

than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion.  Crawford, 363 F.3d at 1158.  Even if the evidence

preponderates against the Commissioner's  findings, the Court must affirm if the decision

reached is supported by substantial evidence.  Crawford, 363 F.3d at 1158-59.

The Court does not decide facts anew, reweigh the evidence, or substitute its

judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir.

2005).  The magistrate judge, district judge and appellate judges all apply the same legal

standards to the review of the Commissioner's decision.  Dyer, 395 F.3d at 1210; Shinn

ex rel. Shinn v. Commissioner of Social Security, 391 F.3d 1276, 1282 (11th Cir. 2004);

Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004).

## II.  REVIEW OF FACTS AND CONCLUSIONS OF LAW

## A.       BACKGROUND FACTS:

The plaintiff was born on May 7, 1955, and was 50 years of age at the time of the

hearing held on November 3, 2005.  (Tr. 53; 404).  The plaintiff completed two years of

college and holds an associates degree in business.  (Tr. 404).  The plaintiff's work

experience consists of a position as a unit secretary in a hospital.  The plaintiff is  also

licensed as a cosmetologist. [Tr. 419].  The plaintiff alleges a disability onset date of

March 20, 2003. [Tr. 50].  The plaintiff alleges she is disabled because of  fibromyalgia,

degenerative joint disease, status post right and left ankle bone fusions, status post jaw

surgery with implant placement and subsequent surgical removal of the implant.  The

plaintiff reports chronic headaches, medication side effects,  anemia with fatigue and

continuous pain "everywhere". [Tr. 407-408, 410, 412].   After a review of the record, the

ALJ found that the Plaintiff retained the residual functional capacity (RFC) for light

work, including her former work.

In his decision, the ALJ notes that there is a prior ALJ decision dated April 8,

2003, which is *res judicata*. [13].   The ALJ indicates that the exhibits discussed in the

prior decision are incorporated "by reference only for historical purposes" and that the

"instant decision considers only the plaintiff's condition after the prior Judge [sic]

decision dated April 8, 2003, i.e., since April 9, 2003 forward." [Tr. 13].

The record shows that the plaintiff underwent bilateral carpal tunnel surgery in

1978 and 1979; gastric bypass in April 1994, a bone graft of the right hip and left subtalar

fusion on November 9, 1994. [Tr. 107, 197].   The plaintiff was operated again on

November 23, 1999, for a left temporomandibular joint arthroplasty and removal of the

left temporomandibular joint Teflon Proplast implant.   [Tr. 94-98].   In December of

1997, the plaintiff was involved in a motor vehicle accident and suffered a right

ankle/foot subtalar strain. [Tr. 192].

The plaintiff was seen by John S. Fifer, M.D., of the Institute for Orthopedic

Surgery and Sports Medicine for subtalar arthritis of the right food and medial

epicondylitis of the right elbow on July 20, 2000. [Tr. 191].  The plaintiff was also seen

by Nancy M. Troast, D.O., for other health issues, i.e., fatigue and anemia. [Tr. 220-224].

On August 10, 2000, a subtalar fusion of the right foot with iliac crest bone graft

and large screw, was planned and this surgery was performed on August 24, 2000.   The

record shows that this subtalar arthritis was an aging phenomenon as a result of her degenerative arthritis. [Tr. 189-190]. On October 5, 2000, the plaintiff was admitted to Lee Memorial Hospital for gastrointestinal bleeding and significant anemia. [112-113]. "Differential diagnosis for bleeding includes peptic ulcer disease versus malignancy gastritis. This is somewhat complicated by her previous surgery in that she has diversion of part of her upper gastrointestinal tract. She has been transfused in the emergency room". [Tr. 112-113]. The plaintiff then underwent an esophagogastroduodenscopy and was admitted to the Intensive Care Unit. The post operative diagnosis was Dieulafoy's lesion in the proximal small bowel. [Tr. 118-119].

The plaintiff was admitted to Lee Memorial Hospital beginning May 31, 2001, until June 3, 2001, for menorrhagia with anemia, total abdominal hysterectomy with bilateral salping-oophorectomy and leomyoma. [Tr. 124-129] The plaintiff was seen for pre and post-operative care by Gilbert J. Draulans, M.D., between May 29, 2001 and July 18, 2001. [Tr. 130-132].

The plaintiff was seen by Dr. Wayne Isaacson, a pain management specialist between April 29, 2002 and June 4, 2002. [Tr. 145-160]. The plaintiff underwent cervical epidural steroid injections on May 7, May 21 of 2002 and June 4, 2002. Dr. Isaccson notes " This procedure is medically necessary and indicated based on this patient's medical history, physical examination, diagnostic studies, clinical presentation and symptoms." [Tr. 145]. The plaintiff's relief of her pain was over 50% and she was able to decrease her pain medication by 50%. [Tr. 145].

The plaintiff was also seen by Dr. Michael Weiss, a gastroenterologist between May and October of 2002 for her history of recurrent GI bleeds while on the non-steroidal anti-inflammatory drugs, which she was to avoid and which contributed to her iron deficiency anemia.   [Tr. 161-168].

The plaintiff returned to Dr. Fifer between December of 2002 and March of 2003 for follow-up of her surgery.  Dr. Fifer noted the plaintiff continued to have "a lot of swelling" at the end of the day and sensitivity around her foot.  The plaintiff was to follow-up in four months. [Tr. 175].

The plaintiff continued to see Nancy M. Troast, D.O. , and on April 16, 2003, the doctor noted the multiple medications she was taking for her chronic pain.  It was also noted that the plaintiff continued to have a history of anemia, fatigue and insomnia. [Tr. 214].     "IMPRESSION: Chronic cervical myofascial pain, status post trigger point injections; ankle subtalar fusion; insomnia and depression". [Tr. 262, 264].  The plaintiff continued to suffer from pain and underwent trigger point injections on April 4, May 8, July 11, 2003 and February 20, 2004. [Tr. 240, 254, 258, 260].

On October 21, 2003, Dr. Galang encouraged the plaintiff to reapply for disability. Dr.  Galang felt that the plaintiff was "incapable of working in any form of gainful employment at this time.  Even with continued appropriate medical management that [plaintiff] will be able to return to her prior duties in the future." [Tr. 252].  On November 24, 2003, Dr. Galang advised the plaintiff that she would be unable to return to work because she was on heavy doses of narcotic pain medications, was opiate tolerant and did have chronic fatigue (often associated with fibromyalagia) and the occasional

forgetfulness associated with the fibromyalgia. [Tr. 250].

On December 10, 2003, at the direction of Dr.  Galang, the plaintiff underwent nerve conduction studies which showed severe right carpal tunnel syndrome. [Tr. 242]. The plaintiff had 18/18 trigger points with tenderness, positive Tinel's sign bilaterally, chronic muscle spasming, tensions myalgias and diffuse pain. [Tr. 242].   Further, that the plaintiff has unpredictable "good days" and "bad days".

On July 18, 2005, Dr. Galang completed a Fibromyalgia Residual Functional Questionnaire wherein he provided a detailed list of the plaintiff's symptoms.  Dr. Galang imposed significant limitations [Tr. 366-370].  At a follow-up visit on August 26, 2005, Dr. Galange noted increased spasming "now into her lower extremities." [Tr. 395].  On September 25, 2005, the plaintiff complained the pain was becoming worse "in her leg".

On February 3, 2004, the Plaintiff was seen by Gail A. Vincent, Ph.D., for a psychological evaluation requested by the Social Security Administration.  The plaintiff underwent testing which revealed no problems in attention, concentration or immediate auditory memory. [Tr. 231].  Dr. Vincent noted, however, that the plaintiff was an individual coping with :chronic degenerative illness, chronic pain, and under constant medical treatment.  Also noted was that the plaintiff was capable of handling her own funds at that time. [Tr. 231].

The Residual Functional Capacity Assessment was completed by a D.D.S. Physician. {Tr. 232-239].    The plaintiff was found to have occasional right-handed manipulative limitations in handling (gross manipulation) and fingering (fine manipulation). [Tr. 235].

**B.      SPECIFIC ISSUES:**

**(1)      THE COMMISSIONER ERRED IN FAILING TO CONSIDER ALL OF THE PLAINTIFF'S SEVERE IMPAIRMENTS**

The plaintiff argues that the ALJ has not properly considered all of the Plaintiff's severe impairments. The record clearly documents that the Plaintiff suffers from chronic pain (status post) bilateral ankle fusion surgery. The Plaintiff suffers from anemia (status post) hysterectomy. The plaintiff has severe carpal tunnel syndrome. The plaintiff suffers from medication side effects. The ALJ would not have found the plaintiff capable of performing light work had he considered all of the plaintiff's impairments.

The plaintiff underwent a bone graft of the right hip and left subtalar fusion on November 8, 1994 [Tr. 197]; on August 24, 2000, the plaintiff underwent subtalar fusion of the right foot, with iliac crest bone graft and a large screw [Tr. 189-190]; on November 18, 2002, the plaintiff underwent a repeat fusion [Tr. 180-184].

The plaintiff treated with Wayne Isaacson, M.D., a pain management specialist, and Dr. Fifer throughout 2002 for ankle pain. [Tr. 151, 156-157]. In 2003, the plaintiff treated with Nancy M. Troast, D.O., who noted the multiple medications for chronic pain management. She also noted that the plaintiff had just gotten out of her cast following her fusion surgery. [Tr. 215].

The plaintiff suffers from anemia and is tired and fatigued "all the time". [Tr. 412-413].  The plaintiff has a history of gastrointestinal bleeding and has received transfusions [Tr. 112-113].  The plaintiff was hospitalized in 2001 (for menorrhagia with anemia, total abdominal hysterectomy and leiomyoma) and in 2002 for upper gastrointestinal bleeding. In 2003, the plaintiff continued to be treated for chronic pain, anemia, fatigue and insomnia.  [Tr. 214].

The ALJ's decision fails to discuss the plaintiff's severe limitations resulting from her carpal tunnel syndrome.  The record shows electrodiagnostic evidence which supports the plaintiff's contention that her  right wrist (plaintiff is right handed) is made worse with any pushing or pulling activity and further that she is limited in handling (gross manipulation) and fingering (fine manipulation)  [Tr. 235].  The ALJ's residual functional capacity finding failed to include any limitation regarding this impairment. [Finding 5, Tr. 13].

The plaintiff testified at the hearing that she is severely impaired with medication side effects i.e.,  sleepiness and agitation. [Tr. 411].  Further, "dry mouth syndrome" is a medication side effect that has caused  her dental problems.  [Tr. 414-415].  As noted previously, Dr. Galange opined that the plaintiff could not return to work due to the heavy doses of narcotic pain medications and opiate tolerance. [Tr. 250].  The consultative psychological examination completed in 2004 documented the plaintiff's complaints of the medications making her lethargic and the consultative examiner's report that opined the plaintiff  "is already on very strong pain medications and would be a major challenge to employ. " [Tr. 15].

These impairments were not addressed by the ALJ and they are in addition to the

plaintiff's severe impairments of fibromyalgia, degenerative joint disease, bilateral

forearm myotendinitis and right arm neuropathy. [Finding 3, Tr. 13].  The ALJ erred by

failing to find these impairments to be severe[5] and therefore his decision is not supported

by substantial evidence.

### (2)      THE COMMISSIONER ERRED IN FAILING TO CONSIDER ALL OF THE PLAINTIFF'S IMPAIRMENTS IN COMBINATION

The plaintiff contends that the ALJ's decision does not properly address the

plaintiff's multiple severe impairments in combination.  The Regulations, at 20 C.F.R. §§

404.1523 and 416.923, require the ALJ to consider the combined effects of all of the

plaintiff's impairments during the disability process.  Additionally, under *Walker v.*

*Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987), the ALJ is required to consider the combined

effect of all impairments in evaluating plaintiff's disability.

The ALJ concluded that the plaintiff's overall testimony was not entirely credible.

[Tr. 16].  The ALJ also concluded  that the RFC statements by the plaintiff's treating

physician, Dr. Galang, "to be magnified" and "not supported by his own objective

findings of record."   The ALJ found the plaintiff's physical examinations to have been

within normal limits and not as extremely limited as indicated by her physician. [Tr. 16].

Yet the record documents that the plaintiff suffers from fibromyalgia and the pain

---

5          A medically determinable impairment or combination of impairments is "severe"
           if it significantly limits an individual's physical or mental ability to do basic
           work activities

associated with that diagnosis.  Specifically, a review of the records shows a  finding of

trigger point pain in 18 out of 18 trigger points.

The ALJ erred by failing to consider all of the Plaintiff's impairments in

combination and therefore this decision is not supported by substantial evidence.

**(3)    THE ALJ FAILED TO PROPERLY ANALYZE PLAINTIFF'S
PAIN**

The Plaintiff contends the ALJ failed to apply the proper standard for the

evaluation of pain and credibility and that the ALJ's RFC determination is contrary to the

medical evidence of record

The Eleventh Circuit pain standard requires (1) evidence of an underlying medical

condition and either (2) objective evidence that confirms the severity of the alleged pain

arising from that condition, or (3) that the objectively determined medical condition is of

such severity that it can reasonably be expected to give rise to the alleged pain.  Once the

standard is met, the ALJ must still evaluate the intensity and persistence of the symptoms

based on all of the evidence of record.  20 C.F.R. 404.1529(c). The ALJ may discredit a

claimant's subjective testimony regarding pain if he articulates explicit and adequate

reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Determining the credibility of a claimant is the duty of the Commissioner.  *Foote v.*

*Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "A clearly articulated credibility finding

with substantial supporting evidence in the record will not be disturbed by a reviewing

court."  *Id*.

The ALJ also did not discuss plaintiff's allegations of her activities of daily living, her prescription medication for pain or the effect her other conditions might have on her disability claim. Instead, the ALJ found her allegation that she cannot work due to fibromyalgia and degenerative disc disease not totally credible. The ALJ fails to cite from the extensive records from Dr. Galang[6] that document the plaintiff's treatment for fibromyalgia, and (right hand) tunnel carpal tunnel syndrome. Further, that the plaintiff also suffers from severe headaches, chronic myofascial pain, trigger point injections, ankle subtallar fusion and depression. [Tr. 240, 242, 245, 254, 258, 260, 262, and 267].

Applying the Eleventh Circuit's standard for pain, there is evidence that the Plaintiff has an underlying condition that could result in pain. This condition was diagnosed as "chronic" and "permanent" by her treating physician and that the Plaintiff has had multiple surgeries and procedures regarding this condition. Dr. Galang documented the Plaintiff's pain, anemia, limitations in her activities of daily living and the use of heavy doses of narcotic pain medications. [Tr. 250].

4.    THE ALJ IMPROPERLY ENGAGES IN THE SIT-AND-SQUIRM[7] ANAYLSIS

In his decision, the ALJ relied on his own observations during the hearing to make his decision. The ALJ concluded his credibility and pain analysis with the following

---

6    The Eleventh Circuit has consistently held that the opinion of a treating physician must be accorded substantial weight, absent good cause" to the contrary. (Walker), 826 F.2d at 1000.

7    "Sit and Squire" jurisprudence is defined as an ALJ who is not a medical expert who subjectively arrives at an index of traits which he expects the claimant to manifest at a hearing".

statement:

> "[R}egarding the claimant's credibility and demeanor, it was observed at
> the hearing that the claimant stated under oath that she could sit for only
> 15-20 minutes.  However, she remained sitting during the approximately
> 3/4 hour hearing with standing up twice but just for a few seconds.
> Further, no facial gestures or grimaces of pain were noted during any of
> her movements and no significant difficulty was observed.  At the end of
> the hearing, the claimant stood up and walked out of the courtroom with a
> normal gait and no difficulty observed.  She exaggerated her symptoms
> and restrictions on her testimony.  These are not supported by the medical
> signs or laboratory findings of record to the extent alleged. [Tr. 16]

There is sufficient evidence to support the plaintiff's source of pain.    However, it does

appear that the ALJ engaged in "sit and squirm" jurisprudence.

**5.    THE ALJ FAILED TO GIVE PROPER WEIGHT TO
THE PLAINTIFF'S TREATING PHYSICIANS AND
THE NON-EXAMINING, NON TREATING PHYSICIAN'S
OPINIONS**

The Plaintiff contends that the ALJ erred by giving great weight to the opinions of

Gail A. Vincent, Ph.D.  (Psychological Evaluation, 2/3/2004) and Patrick A. Ijewere,

M.D. , (Consultative Examination, 2/27/2004). [Tr. 13].  These reports were prepared at

the request of the Division of Disability Determinations. [Tr. 229, 269]

Substantial weight must be given to the opinion, diagnosis and medical evidence

of a treating physician unless there is good cause to do otherwise.  *See Lewis v.* Callahan,

125 F.3d 1436, 1439 - 1441 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583

(11th Cir. 1991);  *Sabo v. Commissioner of Social Security*,  955 F.Supp. 1456, 1462

(M.D. Fla. 1996); 20 C.F.R. § 404.1527 (d).  If a treating physician's opinion on the

nature and severity of a claimant's impairments is well-supported by medically acceptable

clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527 (d)(2).

The record shows that Dr. Galang and Dr. Fifer were both the Plaintiff's long term treating physicians.  Dr. Galang determined that the Plaintiff would be not able to sit and/or stand more than 2 hours per day.  Dr. Galang found that the plaintiff "cannot work an 8-hour day, would need to lie down at unpredictable intervals during a work shift" and had significant limitations in "reaching, handling and fingering." [Tr. 369].  The medical records support Dr. Galang's opinion.

The ALJ discounted all of Dr. Galang's records with the exception of the note that was made where the Plaintiff's was pain was under control. [Tr. 240, 242, 245, 258, 260, 262, and 267].  Although the records show that the Plaintiff's pain was sometimes under control, the Plaintiff medications consisted of a Duragesic Patch, 100 mcg. every 48 hours with Roxiondone for breakthrough pain (up to 10 per day).  Plaintiff was also on Robaxin for muscle relaxation.  The Plaintiff's pain management was a major concern to Dr. Galang throughout the Plaintiff's treatment. [Tr. 254-255]. The ALJ ignored Dr. Galang's  notes and indicia of pain including references from other doctors regarding the long term nature of the Plaintiff's pain, anemia, limitations in her activities of daily living and use of prescription medication.

As the Plaintiff's long term and treating physicians, the ALJ erred in failing to give their findings and opinions controlling weight.

### III.  CONCLUSION

In  the instant case, the ALJ failed to follow the proper procedures as set forth in the Regulations and case law by:

1.      Failing to consider all of the Plaintiff's severe impairments in combination;

2.      Improperly evaluating her capacity to perform her past relevant work at the light exertional level and having the residual functional capacity to perform up to light work activity;

3.      Failing to accord proper weight to the records and opinions of the Plaintiff's treating physicians;

4.      Failing to properly analyze Plaintiff's pain and credibility; based on "sit-and-squirm" jurisprudence.

Remand  to  the Commissioner for further fact-finding is unnecessary because all of the essential evidence was before the "Appeals Council when it denied review, and  the evidence establishes without any doubt that the Plaintiff was disabled". *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

For the reasons stated  above, the decision of  the Commissioner is **REVERSED** and this matter  is  **REMANDED**  to  the  Commissioner for determination of the payments allowable by statute and regulation.

The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Susan T. Yates
Order
2:06-cv-563-FtM-29DNF


       **DONE and ORDERED** in Chambers at Ft. Myers, Florida, this 24th  day of  April,
2008.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE


Copies:
All Parties of Record
All Counsel of Record